Good afternoon. We're here for the in-bank hearing in United States v. Bonds. Are counsel ready? Yes, Your Honor. Looks like armies of lawyers. Mr. Reardon, you may proceed. Thank you, Your Honor. Dennis Reardon for, along with co-counsel, for appellant Barry Bonds. Your Honor, the decision that this court will render in this case is going to receive immense public attention because Barry Bonds is one of the most accomplished, celebrated, and controversial athletes ever to play professional sports in the United States. But that is not the reason this case is so important. Its great significance has nothing to do with baseball and really has nothing to do any longer with Mr. Bonds. What it has to do with is that this is the first time that the United States government has asked for the power to convict a citizen for obstruction of justice based on a statement to a grand jury not responsive to the subject of the examiner's questioning. That is conduct with which Mr. Bonds was never charged and which does not constitute the crime of obstruction. More specifically, the government asserts that it may indict, convict, and imprison any witness whose testimony before either a pettit or grand jury wanders off topic for as little as 15 or 20 seconds. And the government further claims that tangential remarks of as few as 50 words constitute obstruction regardless of how quickly that witness returns to the topic at hand and how directly... One can mislead with the truth. One can certainly mislead with irrelevant statements by leading a questioner into blind alleys. And isn't that why we had a jury? A jury was instructed, it heard arguments, and it concluded that there was in fact a corrupt obstruction of justice. The reason... Obstruction of justice here. Why don't we defer to the jury? Ronston v. United States, Your Honor. That answers that question. That's a perjury case. Yes. But it is not a case about perjury. It is a case about whether unresponsive or even evasive, even consciously evasive statements can be a crime. But they're different statutes, right? They're different statutes. It is a different statute, Your Honor. And what the court said there, the government... But what is the same, Your Honor, precisely the same in that case and this, is the government in both cases is asking a court to stretch a statute, in that case the perjury statute, in order to criminalize evasive or unresponsive remarks. And of course, as with obstruction, there's nothing in the text of the obstruction statute, as was true of perjury, that dealt with unresponsive, albeit truthful statements. And what the court said is we might go beyond the precise words of the statute if we thought they did not adequately express the intention of Congress, but we perceive no reason why Congress would intend the drastic sanction of a perjury prosecution to cure a testimonial mishap that could readily have been reached with a single additional question by counsel, alert, as every examiner ought to be, to the incongruity of petitioner's unresponsive answer. Again, counsel, my colleague, the chief, has asked a very important question to me. Are we talking about the sufficiency of the evidence here? Or are you challenging that somehow one could not be indicted under this statute at all? I mean, it seems to me that those are two questions we have to look very carefully at. Because if we're looking at the sufficiency of the evidence, then we're giving the evidence to the juries, what they had and what evidence they had in front of them. So I'm just wondering, isn't that a very good question? Your Honor, we're going to be looking at both, as you said, Your Honor. But let's look at Bronston on the first one. Let's frame the question here. As a matter of law, as a matter of law, can any jury convict a defendant on the basis of an unresponsive statement under any law? Counsel, I'd like to pursue that with you as a theoretical matter. Because in your brief, you argue that a truthful statement can never constitute obstruction under the statute. And let's suppose that a witness who is key to a grand jury investigation of, say, interstate human trafficking, and has complete meaning and answers questions all day by reading from the phone book. It's truthful. It doesn't mislead anybody. But why isn't that permissibly charged as an obstruction of justice? Your Honor, it's obviously chargeable as contempt. And that witness can be taken before a judge and say, you give an answer to this question, not out of the phone book, a responsive answer, or you're in contempt. But, Your Honor, what the United States Supreme Court has said is that even if a jury finds a defendant intended to mislead his examiner, a jury should not be permitted to engage in conjecture whether an unresponsive answer, true and complete on its face, was intended to mislead or divert the examiner. And what the government is claiming Let me just follow up with one other question. You said it's punishable as a contempt. But does that mean in and of itself that it can't also be criminal under this statute? And are they mutually exclusive in your view all the time? Well, what I would say, Your Honor, is that under Braunston, if the theory of the prosecution is that an unresponsive answer constituted obstruction because the witness intended to mislead the grand jury, the United States Supreme Court has said no, you may not convict on that basis. And the reason why, and it's so applicable here, is they said that then you are having, number one, they said witnesses are all the time, and we all know this as judges and lawyers, all the time are unresponsive in testimony. Sure, but they don't all do it with a specific intent to obstruct, which is also required under the statute. But what is this case, this case required as an element an intent to mislead the jury. That was a separate element that the court chose. Right, which takes it out of the example you gave of somebody who's mistakenly or whatever unresponsive. There has to be a specific intent to obstruct. But, Your Honor, the conclusion of Braunston is it may well be that petitioner's answers were not guileless but were shrewdly calculated to evade. Nevertheless, we are constrained to agree that any special problems arising from the literally true but unresponsive answer are to be remedied through the questioner's acuity and not by a federal perjury prosecution. There is no way that the government can tell this court that what the United States Supreme Court forbade under perjury is permissible under obstruction. Well, it seems that, you know, I think you've kind of gotten a little bit to the back story here. There seems to be that obstruction, the way that it's written, is a little bit of an arrow in the quiver of prosecutors. It's a catch-all as opposed to if you can't get them on perjury, you can get them on obstruction. And a lot of people think that perjury is worse than obstruction and the punishment is worse for obstruction than it is for perjury. But prosecutors constantly are deciding what charges to bring, when to bring them. And so my question is if our three-judge panel provides a prosecutor with leverage, why is that illegal or unconstitutional? Well, two things. I mean, that's what, to me it would have to be unconstitutional as opposed to just leverage. Well, not so, Your Honor, because this court has consistently said, did for 150 years, and in the Haley case, that the obstruction statute is to be construed narrowly and strictly. And then Judge Wallace's opinion in the Rashid case, which the government relies on, said that obstruction is subject to the interpretive rule of a justem generis, which means that it's limited to acts which resemble and are similar to the ones specifically named in the statute. Until 1984, for 150 years, no one suggested 150, I've written about that, no one suggested that the obstruction statute could apply to testimony at all. But the point is, if the train has left the station on that issue, whether you conclude testimony with an obstruction, how can anyone say that the government can import testimony into obstruction but not import the Bronstein principles? And one reason that that would be true is that if the government were allowed to charge as obstruction, not only false, but unresponsive questions, and not bring Bronstein along, then the perjury statute would be rendered completely meaningless. And in many – Your Honor, is your argument based on the fact that the answer was nonresponsive or literally true? Well, we would concede both. Actually, Your Honor, the interesting thing is there is no answer in this sense, that what occurred in this situation is that the government asked the question about self-injection. Were you given anything to self-inject? The defendant gives an answer which is vague, but arguably responsive about his doctor and injections. He then goes on for a while, and then the prosecution says, right, there is no pending question. There's no pending question. He then goes into this discursion about his father and being a celebrity child. Well, no, there is a pending question. I mean, the fact the prosecutor said right doesn't erase the prior question. I mean, he continues. I mean, right is sort of an encouragement, keep talking, which is what a prosecutor will do, you know. So, you know, you just keep talking, you know, keep talking. But, you know, your alliance on Bronstein is a little puzzling because Bronstein was a different statute. It was 18 U.S.C. 1921. I think it's 1621. At least that's – unless I'm holding the book upside down. And it's in the footnote one of the Supreme Court's opinion. So we're dealing with that version of statute. I don't know if it's changed since then. But it clearly calls for untruthfulness. So that's an element. It has to be false. And the Supreme Court says, well, when you're asked to – when the key is – when the statute requires falsehood and you say something that's irrelevant or nonresponsive, that's not false. How does that relate to our case? Because you do not need to have falsehoods to be obstructing justice. You can obstruct justice with the truth. You can obstruct justice with irrelevancy. You can obstruct justice with misleading but literally true statements. So I'm just not sure why Bronstein helps you very much. Well, Your Honor, and I won't die on this hill, but the notion that testimony – It's your client's mistake. You will go home to bed anyway, to your own home, no matter what. But aren't you hanging a lot on a case that really turns on a different statute with a different language? Well, but there is nothing in Bronstein when it discusses evasions of questions. Forget about truth – falsity, because everybody agrees the statement there was true. But what the Supreme Court said is, look, the purpose of the perjury statute, since the existence of common law, was to not provide a penalty or have it interpreted in a way that would discourage witnesses from testifying. And we are not going to have witnesses, earnest witnesses, fear prosecution because of the bumbling of an examiner. And therefore, we are not going to allow evasions. But if you fear prosecution for perjury – Right. But I ask you, Your Honor – For what it's worth, Mr. Irvin, I – you're not making points with me on this one. Oh, well – So, I mean, I don't want to speak for anybody else, but Bronstein is one – construes one statute with particular language. If you have other arguments, perhaps you should move on to those. Well, certainly, Your Honor. Again, I don't mean to speak for any of my colleagues, but – I see you as saying why the rationale of – why we believe the rationale of Bronstein extends to Section 1503. And the reason for that – because in both cases, as I said, there is nothing in 1503 that talks about testimony. There is nothing that talks about unresponsive testimony. The government is asking – That's right. There are very few hard benchmarks. That's right. So given that you've got a statute like perjury that really requires some hard benchmarks, testimony, falsehood, and all that, it doesn't map very well to a statute that is loosey-goosey like – like 1503. I'll make one point and then leave it, Your Honor. The – the Supreme Court said we will not allow juries to convict people on the basis of conjecture about whether they misled a jury under perjury. Counsel, is it something that argument of yours means that we would have to overrule Rashid? Because – because truthful but misleading statements can logically lead to, as a theoretical matter, the suppression of evidence in the same way as subpoenaed documents, which is the situation in Rashid, isn't it? Well, Rashid, as the Court – as you noted, Judge, has nothing to do with – with testimony. It's a situation where someone was subpoenaed for documents and didn't produce them. But let's – let's – let's move on to another area. But the question is really whether it logically leads to suppression. Well – well, you certainly wouldn't have – The situation that the grand jury would be relevant to the grand jury's work. Well, you – you certainly wouldn't have to overrule Rashid because it didn't deal at all with the question of unresponsive answers or testimony at all. But – but let me say Rashid actually is the case we rely on because it says that 1503 is limited to acts in the general omnibus section that are parallel to those stated as specificity in the rest of the section. But let's deal with this. And this is one of the reasons we're talking about importing things into the – into the obstruction section. Counsel, before you go there, is there any case under 1503 which relies entirely on a false – at least an assertion of a false statement or even an accurate statement in response to a grand jury inquiry? Well, I think that we have distinguished the cases in – well, there are cases certainly, Your Honor, which rely on – which say 1503 can include perjury. Okay. This court's opinion in Thomas, that was a situation in which the defendant was convicted of four 1623 violations, perjury violations. Those were incorporated in the obstruction statute in Thomas. Thomas also says that false testimony to a grand jury can be stated under 1503. Well, it upheld – it upheld a 1503 conviction based on four – four – But it was false testimony to a grand jury. That's right. So we do have then in our precedent those cases which suggested false testimony to the grand jury and even false testimony to a magistrate would be actionable under 1503. That's the Gonzales-Morris case. The only thing that we don't have thus far, then, is true testimony. Right. And again, I guess I'm back to this. Influence, obstruct, or impede is what the statute says. We're supposed to be determining whether true testimony, influencing, obstructing, or impeding can make it. And I guess my worry is that you're giving us a case that you think we shouldn't think about and making that general, if you will, idea of what the statute says, but there's never been a case thus far which has said obstruct, influence, or impede would be applicable to true testimony. That's right, Your Honor. This is the first court that's going to pass on that, and I've obviously very extensively made my argument that the Supreme Court's opinion in Bronson should influence that. But let me move to something else. In order to make sense of 1503 and to bring in perjury within it, this court in the Thomas case recognized that you then have to import the concept of materiality in. Materiality, it was recognized as not in the statute. Why did we put it in there? Because you can't have false statements without materiality. So again, are we challenging that there is no materiality in this conviction or in this statute, or are we saying that it is a sufficiency of evidence on materiality? I submit this, Your Honor. I submit this, that no rational jury can find that the celebrity child statement was material to the grand jury when the question that was to which that responded was repeated and answered to the satisfaction of the prosecution. What about the other part of the statement? It wasn't just in isolation. There was also a statement that it doesn't delve into the personal business of others. How does that fit into your argument as being whether or not the statement was true or material? Well, the only thing that the government has argued is obstructive is the 52 words of Statement C, where he talks about a celebrity child and says, yes, he doesn't get into other people's business. Those 52 words. I'm just really curious about this, because the indictment in this case is somewhat like the resolve tomorrow's where you had four counts of false statements and then you had the 1503. There's nothing in the indictment about Statement C. And so yet somehow the jury comes back with the conviction of 1503 just based on this sentence. And when I looked at the whole exchange, the question that he was asked was, did Anderson ever use any kind of prior decidings to inject yourself with? And then you have the first blah, blah, blah, blah, unresponsive answer. And then the prosecutor goes, right, you know, gone. So we go on to our next unresponsive answer. But then the next two questions, the first question is rephrased and asked the exact same way, and he gets straight out no answers to that. And, Your Honor, at page 306, and this is a little unprepared design, the prosecutor says, I guess we've covered this. Counsel, let me go back then to the following. It seems to me that even under the instructions as given and under the prosecution's theory as embodied in that instruction, your position is that there simply was insufficient evidence to convict. If that's the case, why do we need to go into the grand theoretical questions raised by the first issue? Your Honor, you don't have to go into anything beyond the word reverse. That's where we're going. It's like a memorandum of disposition. I guess I follow up on my counselor's question because the materiality then, if we're looking at sufficiency of the evidence, the materiality, whether there's any evidence of materiality is pretty important, is it not? It isn't the government's argument that the agent's testimony regarding, well, I thought I might have to go back and think about this, was enough to satisfy the materiality function of the evidence? Well, this is an important function, and this gets us back to people only being able to be convicted on a theory that was tried to the jury. The government had one theory and one theory alone when it discussed Statement C as to why it was a crime and therefore why it was material. It said he drifted off into Statement C because he refused to answer the question. Their only theory of materiality was that he refused to answer the question. We know he answered the question four times, so there's no way that you can convict Mr. Bonds on the only theory offered to the jury, which is he refused to answer the question or wandered off because he couldn't answer the self-injection question. Why couldn't the jury see that first answer as an attempt to throw the prosecutor off track? And the fact that he eventually was forced to give a straight answer doesn't perhaps in the jury's mind negate the fact that he tried. I mean, let's say he'd given a false answer and then on further questioning had said, no, no, I admit it, I lied, he wouldn't have done that, he didn't do that. I'm just hypothesizing. One could still prosecute him for perjury. But he did quit. Well, he may be acquitted, he may not be acquitted. The jury could look at it and say he tried to lie his way out of it. He didn't, you know, the sharp prosecutor didn't let him get away with it. He then had to tell the truth. Doesn't change the fact that he lied the first time. Why couldn't this be misleading or attempt to mislead and just didn't succeed? He couldn't be convicted of perjury, Your Honor, because under 1623E, the Congress has said if that person admits perjury, corrects their testimony, that is a complete defense to a perjury charge. So what we're talking about here, and the government will have to explain this, you can lie to a grand jury and have it. You're fighting a hypothetical. So let's say he doesn't admit it. He later on gives the answer but doesn't admit he was lying. You know, he tries. I don't see why he can't be held responsible for the first answer because he lied. You know, I'm a little surprised that you go off on materiality. Why aren't you going off on, and it was in your brief, but you haven't said very much about the word corruptly, which is right in the beginning of 1605. Isn't that the key element? And this is where Judge, I think it was Judge Wynn's question about Rashid comes into play, because Rashid goes right to the question of whether something is corrupt. Well, again, we're talking about attempting to rest a necessary element of corruption. We would be talking about it, trying to rest that on literally 20 or 30 seconds. Okay, he wasn't corrupt in his next three answers, but we can punish a citizen for corruption because he digresses for 20 seconds before he answers the question directly. So is your argument that if it's truthful, it can't be corrupt? It may be an attempt to mislead, but if you don't lie or conceal or destroy, which are the three things that Rashid talked about, if you don't do something wrongful like that, then it's not corrupt. I thought that was your argument. Well, at ground level, this is an argument that people in the street understand and give in this case. Unfortunately, they're not on this panel. It's the people up here that you have to persuade. You cannot find corruption. You cannot find materiality. You cannot find an intent to obstruct the grand jury when someone answers the question to the satisfaction of the prosecution. We would then be in a situation. You've got about five minutes left. I have one question about another matter unrelated. What's the case citation for the proposition you stated that if you then correct the answer, you cannot be prosecuted for perjury? It's 1623E, Your Honor. It's the statute that says if you correct the perjury before it has an opportunity to affect the proceeding, it's a complete defense to the fact that you lied and then admitted you lied. You can't correct it at trial, though. No, no, no. You have to do it before the correction. Oh, no, no. You have to do it during the course of your testimony. I mean, if a witness in this case lied and a patient— Is that kind of your meets and bounds argument or that, you know, that it has to be the totality of the circumstances and you can't just compartmentalize it? Well, the meets and bounds quote is from United States v. Aguilar, and I should cite that because that's a case in which the United States Supreme Court said we have to interpret obstruction in a way that is narrow and secondly that gives fair notice to people of what conduct is criminal. Can anyone say that any citizen called before a grand jury ever before this case knew that if they talked about anything other than the question directly, they would be sent to prison? Aguilar also talked about the natural and probable effect of the behavior, and it could not have been your answer about Brownston. The natural effect of the misleading question is follow-up questioning, which is what happened here. So could Aguilar help you out with that puzzle? It says, because the dissent there argued, oh, it's just an endeavor. All you have to do is try or intend to mislead the grand jury. Justice Rehnquist said no. We're not going to let citizens be convicted about that. It has to be something that has a natural and probable tendency to obstruct the grand jury. How can that happen when the prosecutor says, I'm satisfied? It's your fourth answer, and I'm satisfied. And Brownston talks about how there should be follow-up questioning. It's impossible not to import the duty of Brownston into the obstruction statute if we're going to apply it to questioning, and if we put the duty in there, this case was a success. What did the prosecutor do? He did what Brownston said. He responded to a nonresponsive question with direct questions, and he got three direct answers. I'll reserve the few minutes I have left. Okay. We'll hear from the government. May it please the Court, my name is Mary Jean Chan, and I represent the United States in this appeal. This is a sufficiency question, Your Honors. The jury found unanimously that the defendant acted with corrupt intent in trying to obstruct the grand jury's investigation into Anderson, Falco, and their distribution of performance-enhancing drugs. Well, Judge Brownston suggests that the fix for these sort of situations is for the AUSA to follow up, which is exactly what happened in this case. The AUSA did follow up and got the answer that he wanted, and that was the basis for the perjury charge that the jury rejected. Why can't, for purposes of the obstruction statute, a nonresponsive answer, and let's say it's misleading when basic nonresponsive answers also be cured? Well, I think it's possible to be cured in the context because there are limitations within the obstruction statute that require a jury to look at the context. You have to find that there was specifically corrupt intent, and so you can't really determine that without looking beyond the statement and looking at the course of conduct. Well, that's your problem, in my view, and I'm speaking only for myself. Given you the benefit of all of your theoretical arguments, that evasiveness can count, that the instructions were correct as given, I don't see how there's sufficient evidence where the question was re-asked immediately and answered repeatedly. So it's as if, you know, someone says, well, I can't remember what time it is. Oh, yeah, it was 7 o'clock. It just doesn't make sense to me that a jury could find the elements as instructed given the specifics of this case, and I don't get it. I have two responses to that, Your Honor. First of all, the responses that he gave, the direct responses, were false. Why does that matter? Because you don't have a perjury conviction, and on this appeal, you can't seek one. Wait a second. I'm sorry. I just want to add to your point. He said no, but have you proved in this case that those answers were false? No. Absolutely, we have. Well, if you had the jury on those four counts, you can't use that to say you proved it. Under Yeager and Powell, this court has to look at all the evidence in light most favorable of the government on the one count that was returned. Right, and so I want to get back to that. The one count on which there is a conviction has nothing to do with perjury, and whether he was or wasn't guilty of perjury, whether he was or wasn't convicted of perjury seems to me entirely beside the point. We have only Statement C to look at, as you said, and as your opposing counsel said, in context. So whether he answered the question and whether he answered it falsely seems to me to be not available to you in the particulars of this case the way it has shaped up. Here's where I disagree, Your Honor, because the whole idea of evasion is that you're trying to deprive the grand jury of the truth, and if, in the process of that, you never give the grand jury the truth, that context matters to determining whether what you said was evasive. It isn't a situation where you say, oh, what was the question, and then you give the truthful answer at 7 o'clock. You continue to evade. Let me follow up on that and make sure that I understand your responses, because in response to my earlier inquiry, you indicated that from the government's view, as a theoretical matter, a nonresponsive or evasive misleading question can be cured as a theoretical matter, correct? And then you get the sufficiency of the evidence for these particular facts, but I wanted to make sure that that's the government's position, that as a theoretical matter, for purposes of the obstruction statute, you can cure a nonresponsive misleading statement. Well, what I mean by that, Your Honor, is there's no corollary to the 1623E provision, but that if... Well, what do you think? We're dealing with the obstruction statute. Right. And a nonresponsive misleading answer can be cured. What I mean is that cure is a different word than what I would use, Your Honor. I would say that if you end up telling the truth... No, but that's the question you're being asked, and I would like to know an answer to Judge Wynn's question. Not a different question, but... As a theoretical matter, we're not talking about the facts of this case. Yes. Yes, I do agree. You just gave an evasive answer. At least I don't think I had the intent to. There was no corrupt intent, Your Honor, which is one of the four important limitations of the statute. That might be a jury issue, and remember that the U.S. attorney is watching. I hope I have good... And I think I heard a yes in response to my question as a theoretical matter. As a theoretical matter, I think it is, but it's taken into consideration. I'm sorry. I forgot the question, so I don't know whether a yes means yes or a yes means no. Well, Your Honor... Which way was the question phrased? I think that... Can you cure a... I think that was the question. That was the question. Can you... Nonresponsive misleading answer be cured? Not if there is intent to obstruct at the time that it is given, but if there isn't that intent, it can be cured in the sense that if you give the actual correct answer afterwards, it goes to show the truthful answer. In your matter, if you give a misleading statement and you're thinking to yourself, who am I going to get in trouble for that one? And the AUSA does its job and follows up and you give a truthful answer, that does it. That would not serve as a basis for an obstruction charge. I agree. I agree. Given that that's the case, why wasn't it cured in this case? Are you asking us then to consider the evidence that the jury didn't accept by hanging on the perjury statute and bring that into considering whether the government has met for the purposes of the obstruction charge? Is that your theory of how it wasn't cured in this particular case? That's one of my two theories. The first theory is that under Yeager and Powell, you have to consider that evidence. The second one is that it's evasive towards the larger inquiry in this case. It's a linchpin statement, Your Honors. What he's trying to say there is to give a cover for why he doesn't provide any responses or why he doesn't have any information about the inquiry about Anderson, Valco, and the performance-enhancing drugs that they're alleged to have distributed. To say that he didn't have anything seems illogical given that he was spending every day for five years with Anderson in a gym that was half a block from Valco, publicly endorsing them and being the key link between many of the athletes who purchased drugs from Anderson. I'm listening very carefully, and I want to take on your first issue. Yes. You suggest that Powell and Yeager are the reason why. In either case, Powell or Yeager, did the state say to the judge, we're not going about falsity in this particular case? We don't want to get involved in falsity. We're not even going after falsity. We're going after evasive or misleading. We don't want you to go about falsity. In any one of those cases, did they argue to the jury, you don't have to worry about falsity? No, they didn't. Your demeanor or the government's demeanor in this case said, take falsity off the books. And now you come to me and say, put it back on the books, judge, and give me a verdict. Tell me why I should or what case says I should, because Yeager and Powell. Well, I think the jury instructions instructed the jury that the arguments of the lawyers were not evidence, and the jury instructions told them that they could find that it was either intentionally evasive, intentionally misleading, or intentionally false. The law says that the person who's making the argument, who says my case is not based on this, don't go there. I want a verdict based on something totally different. And then come to me as the judge on appeal and say, well, I know I took it off the books, but now put it back on and give me a verdict. Because I look for something. There is something. Yeager and Powell say, I can look at inconsistent verdicts, and I can still affirm them. But neither Yeager or Powell did it ever say, and the government took it off the books, the counsel took it out of the case, and still you can give the verdict. I agree with Your Honor, but I don't think that that's what happened in this case. We didn't argue it. Do you want me to go through the references of ER 69, ER 165.1, ER 62, that say what you said to the court and the jury about falsity? Well, we specifically asked for a jury instruction, Your Honor, that allowed the jury to look at that. But more importantly, Your Honor, we're not arguing, the emphasis isn't that statement C was false. The issue is that statement C was evasive, and then we're talking about the other statements that he answered being false, and we obviously charged that in count two. That C is the only one we're really focusing on. The other statements, if at all the jury did not help, C is the only one you want. That's right, but the theory is that it's evasive, but if you're looking at the context in which it was made, you can properly look to see whether the things that surround statement C were truthful or false testimony. In this case, I think that this Court has required, under Yeager and Powell, to look at it in the light most favorable to the government and find that those were false. Okay. I have a question about the scope of the statute as you construe it. Yes. As I understand it, you're saying that an evasive statement with an intent to evade in the obstruction of justice violates the criminal statute. So I've got an example for you. What happens if we're in civil litigation and I send a lot of interrogatories to the other side and they give me some truthful but evasive answers? Have they engaged in criminal behavior? It depends, Your Honor. It depends whether they did it with corrupt intent and if it was material. Well, I'll hypothesize that they did it with the intent to mislead me, hoping that I wouldn't follow up with an order to help. Have they violated the criminal statute? I think so, yes, but that's assuming quite a lot, that burden. So how many San Francisco lawyers do you think are in jail? That is common behavior in civil litigation. Have you just criminalized half the bar here? Well, Your Honor, it's with the corrupt intent and to obstruct the grand jury. It depends on what you mean by corrupt intent. I'm hypothesizing intent to mislead, and I gather that your understanding of corrupt is if it's intent to mislead, it is corrupt. And the statute here does not confine itself to intent to mislead by evasive statements in criminal cases. This statute applies to civil and criminal. That's correct. I find your reading of the statute absolutely alarming, and half the bar, maybe three-quarters, maybe all of the bar is in big trouble. Your Honor, I think that that may—I think that that hopefully isn't really the case, that there's so much of an intent to obstruct the grand jury because— How much civil litigation do you do? I don't do any, and that may be why I— Right. In fact, you sort of engaged in some of this, too. This is part of the constructive amendment argument raised by the defendant here. And what happened is in the superseding indictment, you listed four separate pieces of transcript, but none of them wound up being the subject of the conviction here. And the argument is that you did precisely that. You sort of listed some stuff, and then you said, oh, and everything else. And then when it came to trial, you actually tried them on something else. When did the defendant actually find out that this would be the subject of the trial, this particular snippet of transcript? He knew this years, Your Honor, before the actually third superseding indictment was presented because it was part of the— It was, in fact, not in the third superseding indictment, right? Pardon? It was not in the third superseding indictment. It wasn't listed specifically in the superseding indictment. When you say listed specifically, was it listed generally? I mean, you know, was it in there or was it not? If I do a search for the words, will I find it in there? You will not find the words, Your Honor, but you will find that it was material testimony. Why not? Why not? Why not? It was specifically deleted by the asterisk. When you repeated the conversation or the interrogation, you deliberately excluded that. As to the false statement count, Your Honor, but the fifth count stated— But you didn't put it anywhere else. I mean, this was the least important statement to you until after not notifying him that that was one of the statements and deliberately not notifying him that this was one of the statements. You then get to trial and you rely and can get a conviction only on the one of which he was not specifically advised. Your Honor, prior to this— Well, I think that's misleading, you know? Attempt to sort of mislead the proceeding, you know? Well, if that's what you're going after, doesn't the government have an obligation to listen and say, Look, this is what we're going after you. This is what you need to defend? The court—excuse me, sorry. The cases have always said that you can have a larger scope and there was just a simple narrowing of it. The defendant was put on notice that he was being charged with all material testimony given on one day, December 4, 2003, during two and a half hours of grand jury testimony about a specific subject. A perjury indictment would have had to list the specific statement that was alleged to be perjury, wouldn't it? Yes. And so why should this be any different? Because the statute of 1503 doesn't charge—the unit of prosecution is not based on a statement but a course of conduct, and that's the obstruction, so— I'm not sure you were pursuing a statement, just this one statement. We were pursuing, actually, a number of statements. We believe that that's simply one example of a course of conduct. But you pursued the ones that were listed as perjurious and that said, but not limited to, correct? Correct. And it was clear in this case that the defendant knew because, actually, during the—there was a prior trial date, as you know, that there was a lot of litigation in this case, and prior to the previous trial date in March 2009, there had been proposed jury instructions which had listed specifically Statement C. Then it was listed as Statement F as a basis for the prosecution, and we never deviated from that. The only thing that changed was the late number. Go ahead. It's our position that it wasn't required to be because he was on notice, and what we argued was—or what our position is that it's argued—sorry, it was charged with the whole, all the material testimony from that day, and that simply at trial there was a narrowing when we listed it. But the defendant was clearly on notice of this prior to the third—return of the third superseding indictment. I'd like to kind of expand your theory on notice in terms of that it sort of leaves off where Mr. Rubin left off. And the Supreme Court in Aguilar states that citizens should be given fair warning of what the law intends to do if a certain line is passed. And so when you—you know, when someone's testifying before the grand jury, how would someone, he or she, know that they may be prosecuted for obstruction of justice, particularly when he or she tells the truth and still answers the questions posed? So how are you satisfying the notice that Aguilar requires? The corrupt intent, Your Honor. All of this doesn't matter. There are several limitations, obviously, to obstruction, but probably the most difficult one thing to prove and the most key thing is corrupt intent. It's not in perjury. That's just a knowing mens rea. You have to have corrupt intent, which Rashid said means a specific purpose to obstruct the grand jury's investigation in the case of a grand jury proceeding. And so somebody who goes into the grand jury meaning to tell the truth and telling the truth or maybe sometimes, you know, rambling, that doesn't fall within the scope of the statute. And context shows all of that. Here, Statement C is part of 25 instances where the defendant came into the grand jury and invoked friendship as a cover for why he didn't know anything about performance-enhancing drug distribution by Greg Anderson and Balco. Counsel, this is where I go back to Mr. Reardon's reference to the Bronston case. Granted, that was a perjury case. We understand that. But doesn't the same principle apply when the court there says the burden is on the questioner to pin down the witness to the specific object of the inquiry and that any special problems arising from a literally true but unresponsive answer are to be remedied through the questioner's acuity, in other words, the prosecutor's acuity? Why doesn't the same principle apply here to 1503? It doesn't apply because perjury specifically requires falsity. And it doesn't have the internal checks on looking at context that obstruction does. The unit of prosecution for perjury is simply a statement. The mens rea is simply knowing. Those are very low burdens. And so a person could look at simply that and not look beyond the context. And if this went so high, that kind of doesn't make sense to me. You mean the defendant was acquitted? He was not acquitted of anything. There was only a deadlock. He wasn't convicted of perjury. Right. But that could be for a number of reasons, as this Court and Supreme Court have recognized. Inconsistent verdicts are common, and it's not for us to speculate as to why, whether it was jury fatigue or maybe they thought perjury was a more difficult thing and they wanted to give him some, they were exercising lenity. We just don't know. Can you narrow down the theory with regard to the obstruction of justice charge, the particular statement because of a concern over demonstrating jury unanimity with regard to the particular statement starting days in? Was there some other reason? I'm sorry. Can you say that again? The government charged the obstruction charge on a very broad theory. Right. The government ended up relying on a particular statement, and Statement C was the one that the jury ultimately accepted in returning a guilty verdict. Did the government do that because of concern over having to demonstrate jury unanimity? We did that because we did that because Judge Ilston was concerned about jury unanimity as being a requirement, which our position is that it's not required. Under Shad, under Hofus, under a number of cases, there's no requirement of jury unanimity. And our view is that what was charged here was a course of conduct, material testimony. There are numerous instances of what we consider to be material testimony. The jury did not have to reach unanimity on which ones they thought were obstructive. But because of the court's concern, we did. What I'm wondering about when I grapple with all these arguments is what principle of law is the government arguing for in the application of 1503 that ordinary citizens could understand and apply apart from the particular circumstances of the Barry Bonds and the Blanco investigation? Well, I think ordinary citizens can understand that they should not purposely try to obstruct a judicial proceeding that's pending. They should not answer material questions falsely or try to evade them or try to give excuses. So you're saying that the ordinary citizen is called into the grand jury room to give testimony, has to read the mind of the prosecutor and know what their entire case is so that they know what is responsive versus what's non-responsive? Absolutely not. No, of course. The ordinary person doesn't have to do that. But in this case, he was subpoenaed. He was immunized. Is this rule of law being applied just to Barry Bonds in this case? No, but in order to show intent. I'm trying to look for broader principles here than construing 1503 for the future. If you were to write it in your favor, what would you say? Of course. I would say that an ordinary person who is immunized, subpoenaed, and told what the subject matter of the investigation is should tell the truth to answer the questions and not be evasive or misleading or state things that are false in an intentional way for the specific purpose of derailing the grand jury's investigation. Okay. To turn to the witness to the U.S. Attorney, following up on Judge O'Scanlan's question, do you think the Supreme Court's statement in Brownston that if a witness evades, it is the lawyer's responsibility to recognize the evasion and bring the witness back to the mark to flush out the whole truth with the tools of adversary examination, do you think that that principle applies to the lawyers here? I think that – I do. I do, but I don't think that is – what I mean by that is that I do not think that if a lawyer fails to do that, that automatically means that there is no obstruction there. It means that it goes to the entire analysis of whether the defendant could have understood or misunderstood the question. And so that goes to the intent and it goes to the materiality. I think it goes to the fact that you can't get a perjury conviction if you don't have – fulfill that obligation. That's right. But you are saying that doesn't apply the description by the Supreme Court of a lawyer's duty when the witness is evasive. Right. That only applies to perjury. It doesn't apply to obstruction of justice. Exactly. I think it's certainly – Why? Why when the Supreme Court tells you how a lawyer should behave when the witness is evasive and what is your duty to do when you can't get a conviction? Why do you think they wouldn't think the same thing about a lawyer who is faced with an evasion in an obstruction of justice case? I can't imagine why. Well, because Bronson specifically requires falsity and that was a very specific case where the statement that he gave on its face was literally true and it was only false potentially by implication to – by the question. So the only context that made it false was that question. And so, of course, it was – That's hardly what the Supreme Court said. They said when the lawyer is – when the witness is evasive, this is how a good lawyer behaves. This is how a lawyer should behave. I agree. I think that – But that was the context of the – Yes. And you can say it was a defendant named Bronson. This one's named Bob. Those are the facts in this case. Well, I think that what the court was saying as a general rule is true. And, in fact, the prosecutors in this case were both persistent and tried to be precise in their questioning. You can see the – Well, they got the answer. Right. They were precise. They did that. They got a false answer. It's true. But in the meantime, before he got to the – Because he didn't want to prove that. If we find that Section 1503 doesn't reach truthful but evasive testimony, could you retry Bonds on the theory that Statement C was false? We changed what 1503 covers saying it has to be false misleading. It can't be evasive. Could you retry him now? No. I think so. I mean, there may – I'd have to think a little bit more about the double jeopardy issues, but since – but I'm not – but I think – Well, I hope you think about more than that before you decide to retry him. Well, Your Honor, we didn't decide to pursue the deadlock count. So, yes, we are – I think we're very cautious and circumspect in this prosecution. I have a question that follows up to some degree on Judge Wardlaw's question and my earlier question. I think it's a common experience among all of us on this appellate court to ask a lawyer in front of us on a criminal case that's come up on appeal, Counsel, could you please explain to me what happened in trial? And for the lawyer arguing from the U.S. Attorney's office to say, Your Honor, I was not the trial attorney. Now, sometimes that's an evasive answer. They may well know the answer. But it's true that they weren't the trial attorney. Now, let's assume that our lawyer in front of me does know the answer and responds to me saying, I was not the trial attorney. Has the lawyer just committed a crime? I think that there are a couple of limiting principles there. First of all, it's – Why don't you answer the question and then explain your answer by the limiting principle? Yes, Your Honor. I think that that would not be – that would only be obstructive if there were a corrupt intent, and it would likely not be because it's in an adversarial advocacy position. Same as the defense lawyer was asked the question and said, I wasn't the trial lawyer. Same truth? I just want to be sure if – Yes, yes, of course. I mean, what's good for the goose is, of course, good for the gander, Your Honor. But why, if you're in an advocacy position, when you give an all-hypothesized and a truthful, evasive answer designed to avoid further questioning from the judge, and I think that's your definition of corrupt, why is that not criminal merely because it's a lawyer doing it in an adversarial context? I don't see any exception from that written into the statute. Your Honor, I think that the statute is really meant to look at the truth and how the investigation exposing the truth, and that's what Congress intended 183 years ago. Hypothesizing that I asked. Yes. What happened in the trial was designed to get at the truth. Right. The answer that I just hypothesized was designed to put me off the track. Right. Truthful but evasive answer. Right. It may affect the outcome of the case because the judge didn't get the answer and made that influence a vote of confidence. I think that would be obstructive, Your Honor. I mean, if it meets the four limitations. But again, the four limitations are difficult to scale. To show what is inside somebody's mind is probably the most difficult thing that a prosecutor can do because there's usually no evidence of it. So you really have to go to the context. In this case, you have Stan Conti, for example, where the defendant went to Stan Conti two months before he went to the grand jury, admitted that he knew about steroids and Anderson, admitted that his initials were on doping calendars at Anderson's, admitted that $60,000 of currency found from Anderson's was his, gave him a cover story for that, and then he went into the grand jury and he, from the beginning to the end, on every line of inquiry having to do with HGH, steroids, injectables, money, said that he didn't know because he was friends with Greg Anderson. And if that didn't accord with the regular person's notion of friendship, it's because he was a celebrity. I think you're bringing a truthful but completely irrelevant answer. Counsel, on a different point, how, if at all, will the outcome of this case affect sentencing enhancements that are based on obstruction principles? I think it's consistent with that, Your Honor. For example, in this court's case, Sherwood, the enhancement was given for Sherwood, for Cutty, giving evasive, although not specifically false answers that created a false impression. And that was sort of the gist of this, which is that an evasive answer that creates a false impression, just as what Statement C did, that can be construed as false and have a two-point enhancement, which I think this court affirmed, and I believe the chief judge was on that panel. So I think that it is completely consistent with this voice. It could have been a mistake. It could have been a mistake. It could have been a mistake, but I doubt it, Your Honor. We're in a position to correct this. Before you sit down, I asked a question earlier, and I think I cut you off. Perhaps Judge Reinhardt, you didn't give me an answer. You didn't have a chance to give me an answer, so I'd like you to give the answer. Sure. When is it that the defense first learned that the issue at trial would concern the particular passage, which is now the subject of the conviction? It's not in the indictment, and we went over that. When did the defense first learn of it? Your Honor, it was – I do have this. Is it in the record? It is in the record, Your Honor. It was – and I have this down. I actually can't find it. Can you tell us the circumstances? Was it a letter? I mean, how did they learn about it? It was through the proposed jury instructions preceding the trial that was set for March 2009. And, in fact, after that, when the district judge denied their motion to strike language from what was then count 11, the obstruction count, she made specific reference to these statements. They were labeled A through L. I'm sorry. When was this in relation to the trial? When was this in relation to trial? Well, trial was March 21st, jury selection of 2011. And this was, I believe, before the first trial date was March 2009. So it preceded that by two years, I think. And the third superseding – What happened? In fact, it was in there in count 11 originally? Yes, I'm sorry. It's sort of a complicated charging history. But it was then – the second superseding indictment charged the obstruction count as count 11. Yeah. And then the trial date was set for March 2009. Okay. And then at that point, prior to that, the government's proposed jury instructions listed for specific unanimity issues. But that was an earlier trial that didn't occur. Correct. I think Judge Kuczynski was asking, if I understood, when you then gave him an indictment that didn't include this, when after that did he learn that this is what you were going to try to convict him of? Judge Reinhardt understood. Okay. I'm sorry. I didn't understand the question. She phrased exactly what I was trying to ask. I don't think that there – I don't think – I'm not sure I can specify a specific point, but I believe that it was in the February order. Well, life is about specific points, and the question is when, you know, the defendant has the title to know what he's going to be tried of. And the question is, when did this defendant learn that a trial that actually took place would concern this particular passage? February 15, 2011. And that is the district court's denial of the order to dismiss Count 11, then Count 5. It took note that there was a third superseding indictment and said that the government has also agreed to provide the jury with specific examples of these material, evasive, false, and misleading statements not separately charged and to require the jury to agree unanimously as to which one these are. It is in its proposed jury instruction and proposed form of verdict, the government identified 12 specific statements not separately charged in the second superseding indictment. So I would say that that was the point. And that concerned the trial that actually took place? That was – that preceded – that was about a month before the trial began, and it was after the superseding indictment, the third superseding indictment, was returned. And you're not relying on Paragraph 19 of the indictment, which specifically mentions including but not limited to the false statements made by the defendant as charged in Counts 1 through 4? Of course, Judge O'Scanlan. Of course we have to rely on that. So you're exactly right. That is my first answer, which is that gave them notice of it. But I took your question to be something more specific of identifying the Statement C answer. But this particular passage that he was convicted on, Statement C, was that one of the first four counts? Yes. Not first four counts, but it was in Count 2. I mean, it's the same passage area. It's true that it was not specifically – the language wasn't included in the indictment, but it was from the same inquiry, the same line of questioning about injections. Right. But the language does say including but not limited to that. So you're relying on the but not limited. So all of that stuff about, oh, the first four counts, all of that, actually cuts against you because you have ellipsis. So ultimately you rely on the but not limited to, right? Well, that and I would also say – Plus whatever you told us. So if you actually want to know what the word – when they learned that these were the words that he retired on, that was about a month before the trial. That's your answer? I think they knew as soon as the third superseding indictment was returned because it had been what the government was talking about prior to that time. The one that didn't contain this language. Well, the Count 11 and Count 5 are identical. So from the second superseding indictment and the third superseding indictment, the obstruction count didn't change at all. The only thing that changed was we took out some of the perjury counts partly based upon the suppression of evidence. And so that's why there is. So this Court may have some concerns about the contours of the obstruction statute, but we submit that this case falls squarely within the heartland and we ask for an affirmance. Thank you. Thank you. Mr. Eden, I think you had two minutes. I think so. We'll make it. We'll round it up to three. Since we gave opposing counsel so much time. In the course of dealing with the notice issue and the pleading issue, the government just stuck a dagger in its own heart. In response to Judge Friedland. The government has a heart? The heart of the case. Judge Friedland asked, well, if this was a perjury case, you'd have to put the specific content in. And the response was, oh, our obstruction case isn't based on a statement. It's based on a course of conduct. If it's based on a course of conduct, it's based on the four answers to the questions here. And that course of conduct is rambling, a direct answer, a direct answer, and a direct answer. If it's a course of conduct, it has to be an acquittal. Secondly, and this is frightening, their pleading theory is we could just say you're charged with obstruction based on the week-long testimony that you gave in a proceeding. There might be a thousand statements in there. In this case, Mr. Bond said at one point that Balco gave his father protein shakes when he was dying and he appreciated it. He said that his proudest achievement was not his home run record but making the major leads. And he said he liked to go home. He didn't want to be around people after games because he wanted to stay with his family. Each of those statements requires a different factual defense. There's 80 more of them. According to them, you say the whole testimony, you defend against all 80. Judge Smith raised the question of, wait a minute, you tried the case on the fact that it's not false, and now you're telling us that there was falsity. And the Supreme Court in Russell said, and this is the heart of the notice argument, a cryptic form of the indictment in cases of this kind requires the defendant to go to trial with the chief issue undefined. It enables his conviction to rest at one point and the affirmance of the conviction to rest on another. It gives the prosecution free hand on appeal to fill in the gaps of proof by surmise and conjecture. That is what the government is doing here. It had one theory down below. They told Judge Ilston this is not a perjury case, and they're up here arguing that it's a perjury case. And one reason they can do that is you could say, well, sorry, you're limited to what you said about this in the indictment. And they said, oh, we're not limited because we didn't say anything about it. Since we didn't say anything about it, we can move theories from trial to appeal. A final statement saved the government from itself in this case. In this sense, if this court were to rule as the government wants and say that a witness who talked for 20 seconds about an irrelevant topic before directly answering the question, the government would have a moral and ethical obligation before every witness, before a grand jury, to say you're in trouble if you perjure yourself. You commit a crime if you perjure yourself and testify falsely. And let us tell you this, if you spend 20 or 30 seconds talking about problems you have at home or how the witness, the fugitive here that you're asked to testify really isn't a bad person and has done some good things in his life, you can go to jail. And so don't veer off the topic for 15 or 20 seconds. Every witness, with any sense, would go out of the room after every question with a lawyer. They would write down a response. They would come back, and they would refuse to say anything not written down, which had been vetted for the purpose of making sure there wasn't an irrelevancy. And the government doesn't need that. You'll do the government a favor if you overturn this conviction. Thank you. Thank you, Keisha. You will stand submitted to our adjournment.
judges: KOZINSKI, REINHARDT, O'SCANNLAIN, GRABER, WARDLAW, FLETCHER, RAWLINSON, CALLAHAN, SMITH, NGUYEN, FRIEDLAND